1
2
3
4
5
6
7 # UNITED STATES DISTRICT COURT

8 ### EASTERN DISTRICT OF CALIFORNIA

9
10
| | |
|---|---|
| EDWARD SOFOWORA, | ) 1:05-cv-00043-OWW-TAG-HC |
|            Petitioner, | ) |
| | ) ORDER VACATING REPORT AND |
|     v. | ) RECOMMENDATION TO GRANT STAY |
| | ) (Doc. 11) |
| | ) |
| | ) REPORT AND RECOMMENDATIONS TO |
| JOHN ASHCROFT, et al., | ) GRANT RESPONDENT'S MOTION TO |
| | ) DISMISS PETITION FOR WRIT OF HABEAS |
| | ) CORPUS AS PREMATURE (Doc. 16) |
|            Respondents. | ) AND TO DENY PETITIONER'S MOTION |
| | ) FOR STAY  (Doc 10) |
| _____ | ) |

17 Petitioner, currently in the custody of the Bureau of Immigration and Customs

18 Enforcement ("ICE") and proceeding pro se, has filed a petition for writ of habeas corpus

19 pursuant to 28 U.S.C. § 2241.  (Doc. 1).

20 **PROCEDURAL HISTORY**

21 _____Petitioner filed a petition for writ of habeas corpus on January 10, 2005,  in which he

22 asserts that he is a citizen of Nigeria, and an "alien" subject to a final order of deportation,

23 exclusion, or removal, who, pursuant to 28 U.S.C. § 2241, is being mandatorily detained by ICE

24 in the Kern County Jail during his "detention" period.  (Doc. 1, pp. 2-3).  Petitioner asserts that

25 he is not awaiting trial or serving a sentence on any state or federal criminal case.  (Doc. 1, p. 4).

26 Petitioner challenges his mandatory detention as violative of his Fifth Amendment substantive

27 and procedural due process rights.  (Doc. 1, p. 4).  Petitioner seeks immediate release from

28 custody under reasonable conditions of supervision.  (Doc. 1, p. 5).

On May 13, 2005, Petitioner filed an "Emergency Motion for Stay of The Final Order of Deportation Pending Judicial Review of Petition For Writ of Habeas Corpus" ("motion for stay"). (Doc. 10).  On May 19, 2005, the Court issued a Report and Recommendation that the stay be granted.  (Doc. 11).

Meanwhile, on May 11, 2005, Congress enacted Public Law 109-13, The Real ID Act of 2005 ("RIDA").[1]  On May 24, 2005, Respondent filed with the Court a notice of RIDA's enactment that advised the Court of Respondent's belief that RIDA divested the Court of jurisdiction to proceed.  (Doc. 12).  On June 13, 2005, the Court issued an order indicating that the Court viewed the petition to be essentially a request for relief from unlawful detention, not a challenge to the final order of removal, and inviting Respondent to file a formal motion requesting judicial action.  (Doc. 13).

On June 22, 2005, Respondent filed a Response indicating that he continued to believe RIDA divested the Court of jurisdiction.  (Doc. 16).  In that Response, Respondent advised the Court that Petitioner had filed a petition for review of the final order of removal in the Ninth Circuit, in case no. 05-071780, Sofowara v. Gonzales.  (Doc. 16, p. 2).  Respondent also indicated that the Ninth Circuit had already granted his motion to dismiss the petition for review on June 20, 2005.  (Id.).  The Ninth Circuit, however, had issued a stay of removal that was to remain in effect until the case was concluded.  (Id.).  Respondent argued that because Petitioner had sought review of a final order of removal and because the court had issued a stay, then pursuant to 8 U.S.C. sec. 1231(a)(1)(B), the ninety-day period of removal would commence only

---

[1]Section 106 of that law is entitled "Judicial Review of Orders of Removal."  Section 106 amends 28 U.S.C. § 1252, providing in pertinent part as follows:

Notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision...a petition for review filed in an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e)...."

(Emphasis supplied.) Thus, the plain language of Section 106 thus divests the district court of jurisdiction in habeas corpus cases involving challenges to a final order of removal, deportation, or exclusion, and places exclusive jurisdiction for judicial review of such orders in the federal appeals court for the district in which the removal order was issued. In this case, jurisdiction would be in the United States Court of Appeals for the Ninth Circuit.

1 upon the lifting of that stay and the issuance of a "final order" by the Ninth Circuit. (Id.).

2 On August 24, 2005, the Ninth Circuit issued its mandate in case no. 05-71780.[2]   The

3 Court takes judicial notice of the dates and existence of the Ninth Circuit's actions in case no.

4 05-071780, wherein Petitioner sought appellate review of his final order of removal, the Ninth

5 Circuit issued a temporary stay of removal effective until mandate issued, and the mandate issued

6 on August 24, 2005.

7 The Court construes Respondent's Response of June 22, 2005, as a motion to dismiss the

8 petition as premature.

9 **DISCUSSION**

10 Respondent's motion to dismiss raises two issues.  First, the Court must determine when

11 the ninety-day period of removal began.  Second, the Court must determine, in light of the first

12 issue, whether Petitioner's claim of unlawful detention is ripe for review.

13 **1.  Respondent's Motion to Dismiss the Petition as Premature Should be Granted.**

14 A..  The Ninety Day Period Of Removal Commenced On August 24, 2005.

15 After an order of removal is issued, the Attorney General shall remove the alien within

16 ninety days.  See 8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the

17 following: (I) The date the order of removal becomes administratively final; (ii) if the removal

18 order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the

19 court's final order; (iii) if the alien is detained or confined (except under an immigration

20 process), the date the alien is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).

21 Here, the Ninth Circuit issued a temporary stay of removal on June 20, 2005, at the same

22 time it granted Respondent's motion to dismiss case no. 05-71780.  According to the docket

23 records of the Ninth Circuit, the temporary stay was to "continue in effect until issuance of the

24 mandate."  On August 24, 2005, the Ninth Circuit issued its mandate, and, hence, the temporary

25 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26 [2]Federal Rules of Evidence Rule 201 allows the Court to take judicial notice of orders and decisions of
other courts. Papai v. Harbor Tug and Barge Co., 67 F.3d 203, 207 fn 5 (9ᵗʰ Cir. 1995) (citations omitted), rev'd on

27 other grounds, 520 U.S. 548, 117 S. Ct. 1535 (1997); United States ex rel Robinson Rancheria Citizens Council v.
Borneo, Inc. 971 F.2d 244, 248 (9ᵗʰ Cir. 1992) (federal courts "may take notice of proceedings in other courts, both

28 within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")
(citations omitted).

stay terminated at that time.  Pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii), this is the latest of the three events cited in § 1231(a)(1)(B), and, thus, the ninety-day period commenced on August 24, 2005.  See <u>Michel v. Immigration and Naturalization Service</u>, 119 F.Supp.2d 485, 498 (M.D. Pa. 2000).

In <u>Michel</u>, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal on October 27, 1998, making the order of removal administratively final and establishing January 25, 1999, as the end of the ninety-day removal period. <u>Michel</u>, 119 F.Supp.2d at 497.  However, the Second Circuit issued a stay on February 9, 1999, and later vacated the stay when it affirmed the BIA on February 4, 2000.  <u>Id</u>.

In rejecting Petitioner's contention that his ninety-day removal period could only run from October 27, 1998, the District Court held that the "only rational reading" of § 1231(a)(1)(B) was that the statute "provides that the removal period begins on the latest of several dates," and that, where a court stay had been issued, the removal period would "restart after the stay was vacated."  <u>Id</u>. at 498.  Thus, "[t]he passing of one date does not stop the operation of the statute." <u>Id</u>.  The Court explained its reasoning as follows:

> In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes final.  If a court issues a stay, the removal period begins when the stay is lifted.  Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred.  <u>If there is another potential event, there is another potential beginning date for the removal period.  The only sensible reading of this provision is that [ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date</u>.  The obvious reason for this is that [ICE's] authority to effect the removal is suspended due to the occurrence of the later event (such as a stay order)."

<u>Id</u>. at 498. (Emphasis supplied.)

In his "Opposition and Objection" to Respondent's June 22, 2005 motion to dismiss, Petitioner makes the same argument as the petitioner in <u>Michel</u>.  Petitioner contends that § 1231(a)(1)(B) does not apply because the final order of removal issued on March 21, 1991, Petitioner has already been detained on a previous occasion for more than 90 days, and ICE was unable to effect his removal.  (Doc. 17, p. 5).

///

1    The Court is persuaded by the reasoning in <u>Michel</u> and by the unambiguous language of

2    the statute itself.   Thus, the Court rejects Petitioner's interpretation of § 1231(a)(1)(B), and

3    instead construes that provision to mean precisely what it says, i.e., that the period of removal

4    commences with the later of three specified events, which in this case was the issuance of

5    mandate and lifting of the temporary stay by the Ninth Circuit.   Accordingly, the ninety-day

6    removal period commenced on August 24, 2005.  8 U.S.C. § 1231(a)(1)(B)(ii).

7        B.  <u>Petitioner's Detention Is Within The Presumptive Period</u>.

8        The detention of an alien subject to an order of removal for ninety days while the order is

9    effectuated clearly comports with due process.  See <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct.

10   2491, 2505 (2001).  In <u>Zadvydas</u>, the Supreme Court found that the habeas corpus statute grants

11   federal courts the authority to determine whether post-removal-period detention is pursuant to

12   statutory authority.[3]  <u>Id</u>. at 2491.  In addition, the Court held that the Immigration and Nationality

13   Act's post-removal-period detention statute does not permit indefinite detention, but instead

14   "implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's

15   removal from the United States."  <u>Id</u> at 2498.  When faced with making such a determination, the

16   Court must consider "the basic purpose of the statute, namely assuring the alien's presence at the

17   moment of removal."  <u>Id</u>. at 2504.  In addition, the Court must take appropriate account of the

18   Executive Branch's "greater immigration related expertise," ICE's "administrative needs and

19   concerns," and the "Nation's need to speak with one voice on immigration."[4]  <u>Id</u>.

20       The Supreme Court attempted to limit those occasions when the federal court would need

21   to make such "difficult judgments" by setting a "presumptively reasonable period of *detention*"

22   of *six months*.  <u>Id</u>. at 2505 (italics added).  The burden is on the alien to show that there is no

23   reasonable likelihood of repatriation.  <u>Id</u>. ("This 6-month presumption, of course, does not mean

24

25       [3]The Supreme Court analyzed the constitutionality of the period of post-removal-*detention*, not the period of post-removal.  <u>See Zadvydas</u>, 121 S.Ct. at 2504.

26       [4]The Ninth Circuit's decision in <u>Ma v. Reno</u>, 208 F.3d  815, 818 (9th Cir. 2000), <u>cert. granted</u>, 121 S.Ct.
27   297, consolidated with <u>Zadvydas v. Underdown</u>, 185 F.3d 279 (5th Cir. 1999), <u>cert. granted</u>, 2000 WL 38879, was vacated by the U.S. Supreme Court as resting solely on the "'absence' of an 'extant or pending' repatriation
28   agreement without giving due weight to the likelihood of successful future negotiations." <u>Zadvydas v. Davis</u>,121 S.Ct. 2491 (2001).

1  that every alien not removed must be released after six months. To the contrary, an alien may be

2  held in confinement until it has been determined that there is no significant likelihood of removal

3  in the reasonably foreseeable future.").

4        After six months, and once an alien makes a showing that there is no "significant

5  likelihood of removal in the reasonably foreseeable future, the Government must respond with

6  evidence sufficient to rebut that showing." Id.  However, where an alien seeks release *prior* to

7  the expiration of the presumptive six-month period, his claims are unripe for federal review.  See

8  Abbott Laboratories, Inc. v. Gardner, 387 U.S. 136, 148- 49, 87 S.Ct. 1507  (1967) ("[The

9  ripeness doctrine's] basic rationale is to prevent the courts, through avoidance of premature

10  adjudication, from entangling themselves in abstract disagreements over administrative policies,

11  and also to protect the agencies from judicial interference until an administrative decision has

12  been formalized and its effects felt in a concrete way by the challenging parties.").

13       As the previous section makes clear, the ninety-day removal period commenced on

14  August 24, 2005, when the Ninth Circuit issued its mandate and lifted the temporary stay of

15  removal in case no. 05-71780.   Accordingly, Petitioner's removal period will expire on

16  November 22, 2005, and the six-month presumptive period for reasonable detention will

17  terminate on February 24, 2006.   Thus, Petitioner's current detention is still well within the six

18  month "presumptively reasonable period of detention." Zadvydas, 121 S.Ct. at 2505.  Indeed,

19  that period has only just commenced.

20       In his petition, Petitioner alleges that there is no reason to believe that Nigeria, the

21  country to which he has been ordered removed, will permit his removal since the country does

22  not have a repatriation agreement with the United States and has not had one for many years.

23  (Doc. 1, p. 3).  Thus, Petitioner concludes that ICE will be unable to effectuate his removal in the

24  reasonably foreseeable future.  (Id. at pp. 3-4).  Petitioner unsubstantiated allegations alone,

25  however, are insufficient to overcome the presumption of reasonableness of the six month

26  period, and hence his claims of constitutional violations related to his detention are not ripe for

27  review.  Abbott Laboratories, Inc. v. Gardner, 387 U.S. at 148- 49.

28  ///

1    Based on the foregoing, the Court concludes that the petition is not ripe. Therefore, the

2    Court recommends that Respondent's motion to dismiss the petition be GRANTED.  Should

3    Petitioner's detention continue past the six month presumptive period, he may re-file the instant

4    federal action and obtain review.  At that time, however, Petitioner must provide "good reason to

5    believe that there is no significant likelihood of removal in the reasonably foreseeable future."

6    Zadvydas, 121 S.Ct. at 2505.

7         **B.  Petitioner's Emergency Motion for Stay Should Be Denied.**

8         A motion for stay pending a district court's review of the petition for writ of habeas

9    corpus on the merits is reviewed under the same standards employed in evaluating motions for

10   preliminary injunctive relief.  Andreiu v. Ashcroft, 253 F.2d 477 (9th Cir. 2001); see also

11   Zegarra-Gomez v. INS, 314 F.3d 1124, 1125 (9th Cir. 2003).  The petitioner must show "either a

12   probability of success on the merits and the possibility of irreparable injury, or that serious legal

13   questions are raised and the balance of hardships tips sharply in petitioner's favor.  Andreiu, 253

14   F.3d at 480 (quoting Abbassi v. INS, 143 F.3d 513, (9th Cir. 1998).)

15        In Petitioner's emergency motion for a stay, Petitioner contends that the Board of

16   Immigration Appeals and the Immigration Judge impermissibly deprived him of his due process

17   rights by failing to inform him of various legal options, e.g., adjustment of status and a waiver of

18   removal by the Attorney General, purportedly available to him at the time the original

19   deportation order was issued.  (Doc. 10, p. 2).

20        Petitioner's motion for stay must be denied for two reasons.  First, as mentioned above, §

21   106 of RIDA divests this Court of jurisdiction to review challenges to the proceedings resulting

22   in the final order of removal, and provides that the United States Court of Appeals for the Ninth

23   Circuit is the only federal court that presently has jurisdiction to consider such issues.  Since this

24   Court is without jurisdiction to consider claims challenging a final order of removal, this Court is

25   similarly without jurisdiction to grant equitable relief, e.g., a stay of removal, that is derived from

26   that challenge to the final order of removal.  The Ninth Circuit is the proper forum for such

27   claims and, thus, for any injunctive relief associated with such claims.

28   ///

1    Although the Court's original reading of the instant petition was that it was limited in its

2  claims to issues of unlawful detention, Respondent has repeatedly insisted that Petitioner's

3  claims also involve a challenge to the removal proceedings.  (Docs. 12, 16).  Now, Petitioner

4  implicitly concedes in his Opposition and Objection to Respondent's June 22, 2005 Response,

5  that there are "constitutional claims and issues" relating to his removal that should be transferred

6  to the Ninth Circuit.  (Doc. 17, p. 4).  Indeed, Petitioner expressly agrees to a transfer of those

7  issues to the Ninth Circuit.  (Id.).  While the Court continues to have reservations that the issues

8  framed by and pleaded in the petition itself involve matters other than detention, the Court is

9  cognizant of the obvious removal issues raised in Petitioner's request for stay.  Accordingly, the

10 Court will recommend that, when the "detention" issues in this petition have been dismissed,

11 whatever issues remain regarding challenges to the removal proceedings should be transferred to

12 the Ninth Circuit pursuant to RIDA.

13    The detention issues raised in the instant petition, as mentioned earlier, are premature and

14 must be dismissed.  Thus, Petitioner cannot show  "either a probability of success on the merits

15 and the possibility of irreparable injury, or that serious legal questions are raised and the balance

16 of hardships tips sharply in petitioner's favor."  Andreiu, 253 F.3d at 480.  Accordingly, the

17 Court will recommend that the motion for stay be denied.

18    In so ruling, the Court must also address the previous Report and Recommendation,

19 issued on May 19, 2005, in which the Court had recommended granting the stay.  At the time the

20 Court issued that Report and Recommendation, the Court was unaware that Petitioner had

21 concurrently sought review of the removal order in the Ninth Circuit, an act which, as discussed

22 above, effectively restarts the ninety-day removal period under section 1231(a)(1)(B)(ii).

23 Accordingly, the Court will vacate the earlier Report and Recommendation.

24                                              **ORDER**

25    _____For the foregoing reasons, it is HEREBY ORDERED that the Report and

26 Recommendation of May 19, 2005 (Doc. 11), is VACATED.

27 ///

28 ///

1

## <u>RECOMMENDATIONS</u>

2    It is hereby RECOMMENDED that:

3    1.    Respondent's motion to dismiss the petition for writ of habeas corpus as

4          premature (Doc. 16), be GRANTED;

5    2.    Petitioner's emergency motion for stay (Doc. 10), be DENIED; and,

6    3.    All remaining issues challenging the final order of removal be transferred to the

7          United States Court of Appeals for the Ninth Circuit.

8    This Report and Recommendations is submitted to the Honorable Oliver W. Wanger,

9    United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and

10   Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District

11   of California.  Within fifteen (15) days after being served with a copy of this Report and

12   Recommendations, any party may file written objections with the Court and serve a copy on all

13   parties.  Such a document should be captioned "Objections to Magistrate Judge's Report and

14   Recommendations."  Replies to the Objections shall be served and filed within ten (10) <u>court</u>

15   days (plus three days if served by mail) after service of the Objections.  The Court will then

16   review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

17   advised that failure to file objections within the specified time may waive the right to appeal the

18   Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

19

20   IT IS SO ORDERED.

21   **Dated:    September 2, 2005**          **/s/ Theresa A. Goldner**

22   j6eb3d                                  UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28